**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| TIMOTHY S. THERRIEN, | ) | |
| an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 06-CV-217 (JHP-FHM) |
| | ) | |
| TARGET CORPORATION, | ) | |
| a Minnesota corporation, | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF'S COMBINED MOTIONS IN LIMINE TO EXCLUDE EVIDENCE

Plaintiff, Timothy S. Therrien, respectfully requests this Court enter an order prohibiting Defendant Target Corporation ("Target") from offering into evidence at trial, or referring to in any way, the matters listed below.  The purpose behind a motion *in limine* is to "present[] the trial court with the opportunity 'to rule in advance of trial on the relevance of forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'"  Wilkins v. KMART Corp., 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007).  In an effort to limit irrelevant or prejudicial evidence, Plaintiff moves this Court to exclude from the trial the following matters:

1. **Mr. Therrien's Alleged Prior History of, and Treatment for, Psychological or Mental Issues is Irrelevant and Privileged Pursuant to the Magistrate Judge's Prior Order [Doc. 67] and the Subsequent Stipulation [Doc. 69].**

Mr. Therrien is a combat veteran of the Vietnam War. He suffers from post-traumatic stress disorder ("PTSD").  Target has attempted to capitalize on Mr. Therrien's PTSD by portraying him as mentally unstable.  To accomplish its goal, Target has and will use whatever innuendo, hearsay or unsubstantiated allegation it can dig up or manufacture to embarrass and

demean Mr. Therrien. For example, throughout this litigation Target has referred to Mr. Therrien as "schizophrenic." [See e.g. Doc. 61, at 12].  This accusation is completely false.  To support it, Target has relied upon nothing more than a hearsay statement of Mr. Therrien's brother-in-law (Jimmie Crow) and a printout from a website that lists the many clinical uses for the drug quetiapine, which Mr. Therrien has taken in the past.[1]  See id. p. 5, ex. 6.  Despite the fact that there is not one scintilla of credible admissible evidence to support the accusation, Target persists in characterizing Mr. Therrien as a "schizophrenic."  Target no doubt plans to continue this and similar inappropriate lines of attack at trial.

To pursue its attack on Mr. Therrien, Target sought disclosure of Mr. Therrien's medical records for treatment of PTSD from the Veterans Administration. [See Doc 61, p. 11, n. 5].  In its motion, Target requested that the Court strike Mr. Therrien's claim for mental distress if he did not produce his VA records. Id.  Mr. Therrien maintained that his VA records were privileged because he did intend to present any evidence of aggravation of his pre-existing PTSD at trial. [See Doc. 65].  Magistrate Judge McCarthy found that Mr. Therrien's alleged "garden variety" mental distress was too "intertwined" with his PTSD to permit Mr. Therrien to parse his mental distress damages at trial.  [Doc. 67, at 3].  As a result, Magistrate Judge McCarthy ordered that Mr. Therrien could maintain the privileged status of his prior psychological treatment only if he stipulated not to present a claim for mental distress damages at trial.  Id. at 4.  As a result of the order, and to escape the harmful effect of Target's abusive attacks, Plaintiff has stipulated that he will not seek any compensation for, nor offer any evidence of, alleged mental distress at trial. [See Doc. 69].

---

[1] The only medical testimony in this case, given by Dr. Traub, is that quetiapine is prescribed for many conditions including depression.

As a result of the Magistrate Judge's prior ruling regarding Mr. Therrien's past treatment for mental health issues, and Mr. Therrien's subsequent Stipulation, any evidence concerning Mr. Therrien's treatment for or history of any prior psychological conditions is privileged. 12 O.S. § 2503(B).   Moreover, such evidence is now completely irrelevant because Mr. Therrien is not presenting a claim for mental distress related damages.

Target cannot have it both ways.  Target sought to bar Mr. Therrien from presenting any evidence of mental distress damages because Mr. Therrien maintained the privileged status of his treatment records.  Target cannot now use the evidence it successfully excluded as a sword against Mr. Therrien.  Pursuant to the Magistrate Judge's ruling, Mr. Therrien abandoned any claim for mental distress.  The consideration that Mr. Therrien bargained for in return for his Stipulation is that his treatment history remains privileged and irrelevant.  Fed R. Evid. 402. At the very least, Mr. Therrien's Stipulation has tipped to Rule 403 balancing test in favor of excluding such evidence as being supremely prejudicial with virtually no probative value.  Fed. R. Evid. 403.

Any evidence of Mr. Therrien's treatment for, or suffering from, prior mental health issues should be excluded from this case.

**2.**	**Target Has Failed to Designate An Expert to Testify Regarding Whether Mr. Therrien's PTSD or Other Alleged Mental Illnesses Caused Him to Act Violently and Such Testimony Cannot be Elicited from Lay Witnesses.**

Target proposes to argue to the jury that Mr. Therrien's PTSD, or other alleged mental conditions, created "violent tendencies" in him which caused him to act in a certain way in this case.  Target relies almost exclusively on one sentence in a medical record of Dr. Traub, the pain-management physician who treated Mr. Therrien after the stabbing, which refers to Mr. Therrien's PTSD.  *See Ex. 1.*  Dr. Traub, however, never treated Mr. Therrien for any mental

health issues and, by his own admission, is not qualified to testify regarding Mr. Therrien's mental health issues. *See Ex. 2, Draft Deposition of Dr. Traub, p. 35.* Target has failed to designate any expert to give opinion testimony regarding PTSD and whether or to what extent it may cause people to act violently, nor has Target submitted an expert report on any mental-health related topic. Clearly, any evidence, argument or opinion about the effects of PTSD, or any other mental illness, on a person's behavior is far beyond the proper scope of lay testimony. *Fed. R. Evid. 701* (lay opinion testimony cannot require specialized knowledge or training). Because Target has failed to designate an expert to testify regarding whether and under what circumstances PTSD, or any other mental illness, can cause somebody to act violently, Target cannot attempt to illicit such evidence from lay witnesses or make such an unsupported argument to the jury. Hodak v. City Of St. Peters, 2006 WL 521489, at *3, No. 4:04CV01099ERW (E.D. Mo. March 2, 2006) (only a medical expert can tie an injury-causing incident to a diagnosis of PTSD); Ferris v. Penn. Fed. Bhd. of Maint. of Way Employees, 153 F. Supp. 2d 736, 746 (E.D. Pa. 2001) (any testimony by Plaintiff, a lay person, regarding diagnoses of depression and anxiety disorder, are not permitted and expert testimony is required to testify regarding the same given their complex nature beyond the knowledge of the average layperson).

**3.     Payments Made or Credited by Collateral Sources.**

Plaintiff anticipates that Target will attempt to introduce evidence or argument that part of Plaintiff's medical expenses should be set off by payments made by collateral sources such as the Oklahoma Crime Victims Fund pursuant to 21 O.S. § 142.2. Target may also seek to offset Plaintiff's damages by other collateral sources, such as write-offs by the medical providers themselves. However, "it has long been the rule in [Oklahoma] that collateral payment sources

are not to be considered as reducing the damages caused by responsible tortfeasors." <u>Witt v. Martin</u>, 1983 OK CIV APP 33, ¶ 31, 672 P.2d 312.  As the Supreme Court has stated:

> [t]he receipt of compensation by the injured party from a collateral source wholly independent of the wrongdoer would not operate to lessen the damages recoverable from the person causing the injury.

<u>Blythe v. Univ. of Okla.</u>, 2003 OK 115, ¶ 7, 82 P.3d 1021, 1026 (citing <u>Denco Bus Lines v. Hargis</u>, 1951 OK 11, 229 P.2d 560, 564).   The focus of the collateral source rule is on whether the source of payment is independent from the Defendant.  Oklahoma Courts have consistently applied the collateral source rule in a wide range of situations. <u>See e.g.</u> <u>Weatherly v. Flournoy</u>, 1996 OK CIV APP 109, ¶¶ 4-9, 929 P.2d 296, 298-99 (payment of medical bills by plaintiff's uninsured/underinsured insurance coverage); <u>Handy v. City of Lawton</u>, 1992 OK 111, 835 P.2d 870 (payment received by employer-sponsored medical insurance plan); <u>Worsham v. Nix & Scroggs</u>, 2006 OK 67, ¶¶ 52-53, 145 P.3d 1055, 1072 (settlement proceeds from a third party for same damages); <u>Burk Royalty Co. v. Jacobs</u>, 1963 OK 273, ¶¶4-5, 387 P.2d 638, 639-40 (proceeds from contract with federal government); <u>Witt v. Martin</u>, 1983 OK CIV APP 33, ¶ 27, 672 P.2d 312, 316-17 (workers compensation payments for medical bills and disability); <u>Capital Hill Burial Ass'n v. Oliver</u>, 1939 OK 227, ¶ 15, 91 P.2d 673, 676 (burial charges paid by the county instead of tortfeasor).

The collateral source rule has also been applied to payments received from government funds.  In a case on point, the Ninth Circuit held that payments by a government fund fall within the collateral source rule.  <u>Merritt, Chapman & Scott Corp. v. Fredin</u>, 307 F.2d 370 (9th Cir. 1962).  In <u>Merritt</u>, an employee was injured while constructing a dam.  His medical bills were paid by the Department of Labor and Industries for the State of Washington pursuant to state law.  <u>Id.</u> at 373-74.  The Defendant sought to exclude the medical bills from evidence because of

these collateral payments. Id.  The Court disagreed and allowed the Plaintiff to present evidence of the medical bills to the jury because the payments were collateral sources and not be a credit against defendant's liability. Id.  This was especially true because the Department had a right to subrogation. Id.[2]  Additionally, in Thomsen v. City of Anadarko, No. Civ-05-1196-F, 2006 WL 2773230, *4 (W.D. Okla. Sept 26, 2006), the Court declined to reduce plaintiff's award of back pay by amount received by temporary total disability.

Further support for applying the collateral source doctrine to the Victims Compensation Fund is found in § 920(A) of the Restatement (Second) of Torts, "Social security benefits, welfare payments, pensions under special retirement acts, all are subject to the collateral-source rule." (Id. at cmt. c(4)). Other commentators are in agreement. "The majority has held that a plaintiff may recover for the value of the medical services, whether he or she is required to reimburse the government or not.  The collateral source rule applies to such services." Jacob A. Stein, Personal Injury Damages, § 13.11.

Clearly, a government fund created for the compensation of crime victims is a collateral source independent of Target and any payments received from the public fund should neither be considered in the damage calculation, nor should any alleged "write-off" or deduction made by a medical provider to the bills, which would be a reduction entirely independent of the defendant.[3] In either case, the collateral source bars any evidence of a source of repayment or reduction of Plaintiff's medical bills.[4]

---

[2] The Oklahoma Crime Victims Compensation Act also contains a similar subrogation provision. 21 O.S. § 142.12.

[3] Plaintiff's counsel has no knowledge of any such "write off" or deduction separate from the Victims Compensation Fund.

[4] This would include Target's proposed testimony from the records custodians for the medical providers, which Target first gave notice of two weeks after the close of discovery.  Target's

4.      **Alleged Prior Bad Acts and Past Criminal Convictions Should be Excluded as Both Substantive Evidence and Impeachment Evidence.**

At trial, Target will attempt to use allegations and innuendos of Mr. Therrien's prior alleged bad acts to suggest to the jury that Mr. Therrien acted in conformity with his alleged "violent nature."  These prior acts include:

(i)      A 14 year old felony conviction for possession of marijuana in North Carolina, Case No. 94-CRS-14412;

(ii)     Two protective orders entered April 7, 1999 on behalf of Plaintiff's sister and brother in law (Maclyn and Jimmie Crow), which occurred more than six years before the stabbing incident at Target.  (Tulsa County Case Nos. PO-99-1004; and PO-99-1005).  Both protective orders were based on hearsay statements contained in affidavits with no conclusive adjudication of the truth of the matters alleged therein.  The protective orders arose in the context of a custody dispute involving Plaintiff's children.

(iii)    A protective order issued on behalf of Kim Therrien (ex-wife) issued in December 2004 and expiring on January 31, 2008, Creek County Case No. PO-04-347.  The protective order was issued in response to the allegation of assault cited *infra*, Case No. CM-04-707.

(iv)     A misdemeanor conviction for assault in which Plaintiff *pled nolo contendre* on February 28, 2007, Creek County Case No. CM-04-707.  The misdemeanor conviction was entered **19 months after** the stabbing incident giving rise to the

belated attempt to call the records custodian at trial is contrary to a prior stipulation between counsel that will be addressed in a separate motion to strike.

present lawsuit, and the event giving rise to the conviction occurred **6 months before** the stabbing.

(v)     A charge involving alleged violation of the protective order entered in PO-04-347 cited *supra* <u>which was dismissed without a conviction</u> on February 20, 2007, Creek County Case No. CM-05-47.  The incident allegedly involved an attempt by Plaintiff to speak to his son shortly after the entry of the protective order, who happened to be living with his wife at the time.  Plaintiff had not received proper notice of the protective order. This incident does not involve allegations of violence and is therefore even more remote and irrelevant to the case at hand.

(vi)    A charge involving an alleged violation of a protective order entered in PO-04-347 cited *supra*. Plaintiff pled *nolo contendre* to the alleged violation on February 28, 2007, Creek County Case No. CM-05-48.  This incident involved telephone calls made by Therrien to his wife in 2004 several months before the stabbing at Target.  Once again, this incident does not involve allegations of violence and is therefore even more remote and irrelevant to Target's "violent man" theory.

Under controlling law, all of these alleged prior bad acts are irrelevant and inadmissible. Even if such acts were deemed marginally relevant, the highly prejudicial nature of this evidence substantially outweighs its slight probative value.  Fed. R. Evid. 403.

**A.     Character Evidence of Prior Bad Acts is Not Admissible to Prove Action in <u>Conformity Therewith.</u>**

The general rule is to exclude evidence of prior bad acts.  Fed. R. Evid. 404(b).  Evidence of other crimes or bad acts is not substantively admissible "to prove the character of a person in order to show action in conformity therewith."  Fed. R. Evid. 404(b).  This rule has been applied to civil cases as well as criminal to exclude prior bad acts as substantive character evidence.  <u>See,</u>

Chavez v. City of Albuquerque, 402 F.3d 1039, 1046 (10th Cir. 2005).  In Chavez, the Tenth Circuit upheld the trial court's exclusion of evidence of incidents of past excessive force by a police officer under Rule 404(b), when the Plaintiff's claim was based on the exact type of allegation.  Id.  The Court held that prior bad acts must satisfy four requirements to be admissible under Rule 404(b): (a) the evidence is offered for an enumerated proper purpose, (b) the evidence is relevant; (c) the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and (d) the district court provides an appropriate limiting instruction upon request.  Id.  The Court in Chavez found that the prior bad acts evidence failed the first requirement because the evidence did not fit within one of the enumerated exceptions to Rule 404(b).  Id.  The prior bad acts evidence was not being offered for any other reason than to prove action in conformity therewith, despite the offering party's veiled attempts to offer it for mistake, accident, and *modus operendi*.

Like Chavez, the evidence of Plaintiff's prior bad acts in this case is being offered for no other reason than to suggest that Plaintiff has a violent nature and that he acted in conformity therewith.  Target cannot legitimately argue that any of the enumerated exceptions to Rule 404(b) apply.  Moreover, none of the prior bad acts are even remotely similar to the incident giving rise to this case.  Mr. Therrien's prior alleged violent acts all arose in the context of divorce or custody proceedings with family members.  The circumstances of those alleged prior acts are light years away from what happened in this case where Mr. Therrien was shopping at Target when he observed a altercation and was asked to help.  Thus, even if Target could argue that one of the 404(b) exceptions apply, the dramatic differences in the circumstances, and the remoteness is time and place of the prior acts, would render the probative value of such evidence extraordinarily slight when compared to its unduly prejudicial impact.

In Chavez the court excluded evidence of prior alleged use of excessive force where the plaintiff's claim involved the same type of allegation. Here, there is absolutely no similarity between the alleged prior acts and the stabbing incident that gave rise to this case.  It is clear, therefore, that Target cannot offer such evidence in this case to argue that Mr. Therrien acted in conformity with his alleged "violent nature."

### B.    Defendant Should Not be Allowed to Impeach Plaintiff Using Plaintiff's Prior Crimes.

Target should not be allowed to impeach Plaintiff with the prior convictions because the prior crimes either: (i) were misdemeanors with less than one year of punishment, (ii) do not involve an act of dishonesty, or (iii) are too remote in time.  Fed. R. Evid. 609(a).

In a case on point interpreting Rule 609, the Tenth Circuit upheld a trial court's ruling prohibiting defendant's use of prior drug convictions to impeach a personal injury plaintiff.  Gust v. Jones, 162 F.3d 587, 595 (10th Cir. 1998).   The Court excluded the evidence under two separate analyses under Rule 609.   First, the Court found that the drug convictions were not probative of honesty and thus not admissible under Fed. R. Evid. 609(a)(2).  Id.  Second, the Court found that the trial court did not abuse its discretion in finding that the probative value of the convictions did not outweigh the danger of unfair prejudice and thus the evidence would not be admitted under either Rule 609(a)(1) or 404(b).  Id. at 596.[5]

---

[5] Like the Chavez case, the Court analyzed first whether the evidence was offered for a proper purpose.  Gust, 162 F.3d at 596.  The Court found that the past evidence was being offered for a proper purpose because it was being used to demonstrate that Plaintiff's claim for future earnings would be diminished  by his prior convictions.  Id.  The Court then found that even if offered for a proper purpose and relevant, the prior conviction would only lead to an unfair prejudice that far outweighed any probative value.  Id.  Similarly, even if this Court finds that Plaintiff's prior bad acts are being offered for a proper purpose and are relevant, the Court should exclude, like Gust, on the basis that the acts are unfairly prejudicial.

Like <u>Gust</u>,  none of the crimes at issue in this case involved allegations of dishonesty. The protective order and assault conviction were misdemeanors and thus do not involve the threat of one year or more of incarceration.  Fed. R. Evid 609(a)(1)(a).  Further, and like in <u>Gust</u>, any limited probative value of these convictions does not outweigh the unfair prejudice of these convictions.  None of the crimes at issue are remotely similar to the case at hand.  Under Rule 609(a), the past convictions may not be properly used for impeachment purposes.

**C.      Additionally,   the   Applications   for   Protective   Orders   Contain Unsubstantiated Hearsay.**

The protective order issued on April 7, 1999 on behalf of Mr. Crow contains unsubstantiated hearsay and should not be admitted.  Mr. Crow, a medical physician, claims in his protective order application that Plaintiff has been diagnosed as a paranoid schizophrenic. *See Ex. 3*.  This statement is inadmissible for at least two reasons.  <u>First</u>, this statement is black-letter hearsay because it is being offered to prove the truth of the matter asserted, namely that Plaintiff is a paranoid schizophrenic -- which is false.  See Fed. R. Evid. 801.  <u>Second</u>, Mr. Crow is not qualified to render such an opinion.  There is no evidence that Mr. Crow ever treated or evaluated Mr. Therrien for any mental condition. Indeed, Mr. Crow is not a trained psychologist or psychiatrist and was never Mr. Therrien's treating physician.  Target's attempt to use Mr. Crow's statement is an end-around.  Fed. R. Evid. 702.  <u>Third</u>, Target has never identified Mr. Crow as an expert witness nor disclosed any report by him. Mr. Crow has absolutely no foundation to render an opinion regarding Mr. Therrien's mental condition.  Therefore, Mr. Crow's statement in his protective order application, and any testimony regarding the same, should be excluded.

**D.**    **Mr. Therrien's Conviction in North Carolina Occurred Over 10 Years' Ago.**

Mr. Therrien was convicted of possession of marijuana on September 13, 1995.  Under Rule 609(b), "evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction."  Under this rule, Mr. Therrien's marijuana conviction in 1995 cannot be used for impeachment purposes.

**E.**    **Evidence of a "Nolo Contendre" Plea Is Not Admissible.**

In February 2007, 19 months after the stabbing, Plaintiff pled *nolo contendre*, to allegations of domestic assault and violation of a protective order in Creek County Case Nos. CM-04-707 and CM-05-48.  Under Fed. R. Evid. 410 evidence of a plea of *nolo contendere* is expressly inadmissible.

**5.**    **Plaintiff's Divorce and Bankruptcy are Irrelevant and Unfairly Prejudicial.**

Plaintiff anticipates that Target will attempt to embarrass Plaintiff by introducing evidence of Plaintiff's prior divorce and bankruptcy. Plaintiff's divorce records in Creek County Case No. FD-2005-79 and his bankruptcy records in Case No. 04-15362-M are clearly irrelevant. Fed. R. Evid. 402.  Neither his bankruptcy nor his divorce is probative of honesty or any other issue in this case.  Such evidence will be unfairly prejudicial and can only be intended to create an unfair bias against Mr. Therrien.  Because the potential for unfair prejudice substantially outweighs any minimal probative value of the divorce and bankruptcy records, these matters should not be admitted.  Fed. R. Evid. 403.

**6.**    **Plaintiff's Prior Litigation and Workers Compensation Claim are Irrelevant and Unfairly Prejudicial.**

Plaintiff anticipates that Target will attempt to present evidence of prior lawsuits and/or a prior workers compensation claims brought by Plaintiff.  These records are irrelevant and will only confuse or mislead the jurors and unnecessarily lengthen the trial.  Further, evidence of

prior litigation will be unfairly prejudicial and this prejudice substantially outweighs any probative value of prior litigation involving Plaintiff and should therefore be excluded.  See, Koch v. Koch Energies, Inc., 203 F.3d 1202, 1227 (10th Cir. 2000) (trial court wrongfully allowed evidence of other lawsuits).

7.    **Opinion Testimony by Police, and the Police Reports Should be Excluded.**

Plaintiff anticipates that Target will attempt to place into evidence opinions of police officers that the Super Target located at 10711 E. 71st Street South, Tulsa, Oklahoma is "safe" or has a history of being "safe."  These police officers are not being offered as experts.  Instead, these officers are lay witnesses.  Under Fed. R. Evid 701, any lay police testimony regarding whether Target is a "safe" store is not admissible because the police officers did not perceive all the events occurring at Target, either in this case or others. The officers came to the scene well after the event was over.  See, e.g., U.S. v. Garcia, 413 F.3d 201, 210-11 (2d Cir. 2005) (agent's opinion testimony was not based on perception but rather drew upon other investigation participants' perception and should not have been admitted.).  Any lay police testimony as to the "safeness" of Target would be based only upon their subjective opinion about how Target handles the aftermath of criminal events. None of the officers have any first hand knowledge of how Target's loss prevention team apprehends shoplifters.  The police opinion as to Target's alleged "safety" record is inadmissible and should be excluded under Rule 701.

Target also intends to offer the entire set of police reports – some 104 pages -- which include numerous hearsay witness statements. (Target Trial Ex. 4). The witness statements (other than Mr. Therrien's) are obvious hearsay.  Target can properly call the witnesses at trial to relate their observations, but Target cannot bootstrap their testimony into the case by offering a police

officer's report of their statements.  Fed. R. Evid. 801.  Because the police reports are riddled with hearsay, Target's trial exhibit 4 should be excluded.

8.      **Opinion Testimony by Target's  Security Expert regarding Mr. Therrien's Mental Health or His Alleged Propensity for Violence Should Be Excluded.**

Target's security consultant, Thomas Davis, testified in his deposition that Plaintiff was "stereotypical" of people who like to fight and who have a propensity to inject themselves into fights. *See Ex. 4, draft Deposition of Thomas Davis, pp. 61-63.*  Mr. Davis has suggested that he might give testimony regarding Mr. Therrien's alleged propensity to commit violent acts. However, Mr. Davis <u>himself</u> admitted that he is not qualified to give expert testimony regarding whether Mr. Therrien's background created a propensity for him to act in a certain way.  *See Ex. 4, pp. 64-66.*  Mr. Davis has no medical or mental health training or education and he freely admits that he is not qualified to render expert opinion regarding any medical or mental health issues.  *Id at 60-61.*  Mr. Davis is a premises liability and security consultant.  Target should not be permitted to extend the scope of Mr. Davis' opinions beyond that limited realm.

9.      **Plaintiff's Disability, Social Security Benefits and Resulting Unemployed Status Should Not be Admitted as Evidence.**

Plaintiff has been rated 100% disabled by Veterans Administration as a result of his PTSD.  Plaintiff anticipates that Target will attempt to embarrass Plaintiff by seeking admission of Plaintiff's disability and resulting unemployed status.  Not only are these records irrelevant (see discussion *supra* regarding mental health records), such evidence will only confuse and mislead the jurors.  Further, any evidence of disability will be unfairly prejudicial against Plaintiff.  Because the prejudice substantially outweighs any probative value of the disability, these records should not be admitted as evidence.

**10.**     <u>**Hearsay Statement in Medical Records as to How Mr. Therrien was Injured.**</u>

Plaintiff's emergency room records from St. Francis Hospital contain a statement written by a nurse briefly describing the cause of Mr. Therrien's injury.  The nurse wrote that Plaintiff was stabbed when he "assisted a security guard at Target" and "tried to break-up argument at Target." *See Ex. 5.*  Target has attempted, without proper foundation, to attribute these statements to Mr. Therrien.  According to Dr. Traub, however, these statements could just as easily been made by treating emergency personnel, such as an EMSA paramedics.  Although the medical records are admissible pursuant to a stipulation between the parties, the statements contained therein may be hearsay, as in this case when a nurse writes down the cause of the injury without attributing the source of the information. Target may properly ask Mr. Therrien himself what he said to emergency room personnel about the cause of the injury, but Target may not utilize a hearsay statement contained in the records with no evidence linking the statement to Mr. Therrien.

<u>CONCLUSION</u>

Plaintiff requests that this Court exclude the above matters from being admitted into evidence and prevent Target or its counsel from even disclosing or making argument regarding the same to the jury.

RESPECTFULLY SUBMITTED,

/s/ Paul DeMuro
Paul DeMuro, Esq., OBA No. 17605
Dustin J. Vanderhoof, OBA No. 21388
FREDERIC DORWART, LAWYERS
124 East Fourth Street
Tulsa, Oklahoma 74103
918/583-9922 – telephone
918/583-8251 – facsimile

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of April, 2008, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing and transmittal of Notice of Electronic Filing to the following ECF registrant(s):

| | |
|---|---|
| Phil R. Richards<br>Jason L. Glass<br>RICHARDS & CONNOR<br>525 South Main Street, 12th Floor<br>Tulsa, Oklahoma 74103<br>prichards@richardsconnor.com<br>jglass@richardsconnor.com | |

/s/ Paul DeMuro
Paul DeMuro